## Wilson v. Infentino

*Windolph & Johnstone*, for plaintiff.
*Paul A. Mueller*, for defendant.

SCHAEFFER, P. J., January 19, 1951.—Plaintiff filed a complaint in trespass against defendant on April 5, 1950, wherein he averred that a collision occurred on October 27, 1949, between an automobile owned and

operated by Woodland B. Jackson, in which plaintiff was a passenger, and a truck owned by defendant and driven by Robert A. Paul. Plaintiff averred that he suffered personal injuries as a result of the collision. It is alleged in the complaint that the injuries included a concussion of the brain and periodic violent headaches. The claim for damages relates to medical services, pain and suffering, loss of wages and permanent injuries.

A petition was presented to stay the proceedings on August 4, 1950, unless and until plaintiff submits himself to a physical and psychiatric examination by Dr. James S. Hammers. A rule was granted thereon, which is the matter for disposition by the court. The original petition was amended and limited to a psychosomatic examination.

Plaintiff submitted to a preliminary examination by Dr. John L. Atlee, Jr., on December 15, 1949, and a follow-up examination on January 20, 1950. In the depositions of Dr. John L. Atlee, Jr., appears the following:

"Q. I have before me a letter from you . . . dated January 10, 1950, in which the following paragraph appears: 'I have carefully reviewed the case of George Wilson at the General Hospital. Apparently he suffered a mild concussion. His skull X-ray was negative. There was a questionable fracture at the tip of the transverse process, second lumbar vertebra, right side. The shoulder girdle was negative.' Does that represent a summary of your findings?

"A. Yes.

"Q. In a later part of the same letter you said Mr. Wilson impressed you as being more a psychosomatic case than a surgical problem, what did you mean by that?

"A. Meaning that the problems of the body and the mind were relevant.

"Q. Did you afterwards, Dr. Atlee, at my request, write me a letter somewhat elaborating your views about the need of a psychosomatic examination?

"A. That is correct. . . .

"Q. In your opinion would it be possible to give a psychosomatic examination, such as you have in mind, if the patient refused to answer any questions, except giving such routine matters as name and address?

"A. You mean answer any questions?

"Q. Yes?

"A. No.

"Q. For that matter, can an ordinary physical examination be given satisfactorily if the patient would not answer questions?

"A. No."

On cross-examination, Dr. Atlee said:

"Q. Did he answer the questions you asked him?

"A. He did. . . .

"Q. Will you repeat from your notes what findings you had? I believe Mr. Windolph was reading from a letter in which you mentioned a mild concussion and fracture of the lumbar vertebra, was there anything else you found?

"A. A slight increase of the patellar reflexes on January 20th which I thought was due more to nerve tension than anything else. . . .

"Q. Doctor, exactly what kind of an examination would a psychosomatic examination be, what would it consist of?

"A. A complete medical examination.

"Q. What kind of questions would it be necessary to ask, in your opinion, to properly develop that examination?

"A. The usual questions asked in a medical history and none other."

Dr. Atlee said that this would involve questions relating to plaintiff's complaints and a full past medical history.

Plaintiff avers that there is no precedent to submit himself to questioning and interrogation by a physician or any other person on behalf of defendant prior to the trial. In Myers v. Travelers Insurance Co., 353 Pa. 523 (1946), it was decided that the principle is well settled that although plaintiff in a trespass action for personal injuries cannot be forced to undergo a physical examination at the request of defendant, he can be refused permission to proceed with his suit until the examination is permitted. The court said p. 527:

"We may point out that not only is the *occasion* for the physical examination a matter for the sound exercise of discretion by the court, but the *method* and *manner* of examination are likewise within the court's discretion. . . . It would also seem, therefore, that as a general rule a plaintiff should not be subjected to hospitalization for the purpose of examination and study by defendant's physician. On the other hand there would be no unlawful invasion of plaintiff's rights if competent physicians at a reasonable time and place physically examined him, aided by such mechanical devices as stethoscope, electrocardiograph, X-rays, etc. Such matters are within the discretion of the court."

See also Cohen v. Philadelphia Rapid Transit Company, 250 Pa. 15.

No Pennsylvania case can be found in which a psychiatric examination was ordered by the court in a suit for personal injuries. There appears to be no precedent also in this state for a psychosomatic examination in such a case. The only Pennsylvania case submitted is

Hess v. Lake Shore & Michigan Southern R. R. Co., 7 Pa. C. C. 565, in which it is said:

"To interrogate the plaintiff as to his condition, the nature of the injury, or the manner in which it was sustained, thus, perhaps, eliciting declarations from him which may be used in evidence against him, would be highly improper, when the circumstances necessarily attending the examination are considered."

. The court ordered that no questions be asked plaintiff as to the nature or extent of his injury, his present condition, the circumstances of the infliction of the injury, or in any way relating to his claim.

In view of plaintiff's claim and the nature of the injuries set forth in the complaint, apparently no claim is made by plaintiff for mental disorder or mental impairment. It is not averred by plaintiff that he is suffering from a psychiatric disturbance. Plaintiff has already submitted himself to a medical examination twice by a doctor of defendant's choice. He appeared for the third examination before another doctor, which was to be of a psychosomatic nature, but on advice of counsel refused to answer questions. Certain limited questions are necessary and proper in connection with a medical examination as stated by Dr. John L. Atlee, Jr., supra. However, under the particular facts and circumstances of the case at bar, plaintiff has had sufficient medical examination to afford a fair trial under the pleadings filed in this case. If it develops at the trial that any further examination of plaintiff is necessary, the court may permit it to be done under specific instructions.

And now, January 19, 1951, the rule to stay the proceedings in this case pending a psychosomatic examination by plaintiff is discharged.